A. B. STODDART v. R. J. VANLANINGHAM.

1. INJUNCTION; *Evidence on Motion to Obtain Temporary Writ.* On an application for a temporary injunction, where notice of the same has been required to be given to the defendant, and notice has been so given, the defendant may, on the hearing of the application, even before answer filed, introduce any legal evidence that would tend to show that the injunction should not be granted. He is not confined to evidence that merely tends to disprove the allegations of the plaintiff's petition.

2. COUNTY-SEAT CONTESTS; *New Action, and New Parties, involving Questions already Decided—Injunction Refused.* Where an election for the location of a county-seat has been held, and two places are voted for—one place being at the time the county-seat, and the other place not, and the board of county commissioners afterward duly canvass the votes and declare that the other place has received a majority of all the votes cast, and has thereby become the county-seat; and a certain person, being friendly to the old county-seat, afterward commences an action, under § 5 of the act providing for the contest of county-seat and other elections, (Laws of 1871, p. 192,) against the county clerk to perpetually enjoin him from moving his office from the old county-seat to the new county-seat; and the said action is prosecuted in good faith, in the district court, to final judgment. upon its merits, and the final judgment is rendered in favor of the defendant and against the plaintiff; and where another person, also friendly to the old county-seat, immediately afterward commences another action, under said § 5, to perpetually enjoin the register of deeds from moving

Statement of the Case.

his office from the old county-seat to the new one, and also at the same time applies to the judge of the court at chambers for a temporary injunction to restrain said register of deeds from moving his office until the action could be heard and finally determined, and notice of the application is required and given to the defendant; and the judge upon the hearing of the application refuses to grant the temporary injunction, *held*, that the judge, exercising a sound judicial discretion, did not commit any error.

### *Error from Neosho District Court.*

INJUNCTION, brought to contest the county-seat election held March 26th, 1872, and the same election which was in controversy in the case of *Butler v. McMillen*, 13 Kas., 385. Final judgment was entered in the *Butler-McMillen* case, in the district court, on the 10th of July 1873. On the 18th of said July *Stoddart* filed his verified petition in the same court against *Vanlaningham*, register of deeds, to enjoin defendant from removing his office from Osage Mission to Erie. The board of county commissioners as canvassers had determined that 3391 votes were cast in the county—1712 for Erie, and 1679 for Osage Mission; majority for Erie, 33. The poll-books returned from Erie precinct showed 595 votes cast at that precinct—590 for Erie, and 5 for Osage Mission. The ground of contest stated in *Stoddart's* petition was, "that 168 of the votes returned from Erie precinct," (setting forth the names and numbers of the illegal electors as they appear on the poll-books,) "were illegal, false and fraudulent, and more than 100 others, the names and numbers of which plaintiff cannot give, were illegal, as Erie precinct only contained 300 legal voters at the time of the election." Application being made for a temporary injunction, the district judge required notice to be given to defendant of the hearing of such application, and such notice, with notice that affidavits would be read in support of said motion, was served on defendant. The application was heard before the district judge at chambers, on the 3d of August. In support of his application *Stoddart* read his verified petition, and the affidavits of several parties relating to the conduct and validity of

the election held at Erie precinct: and thereupon *Vanlaningham*, in opposition, over plaintiff's objection and exception, read a large number of affidavits in regard to the validity of said election, and also the affidavit of one Peter Walters, as follows:

(*Title, and Venue.*) "Peter Walters upon his oath doth depose and say, that heretofore, in the district court of Neosho county, and since March 26th, 1872, a certain other action was pending and determined in said court, which said action had the identical objects and purposes in view that the present action has, as will more fully appear by the record, judgment, and decree, a certified copy of which is hereto attached marked 'Exhibit A,' and made a part of this affidavit. Said action was entitled 'Thomas H. Butler, plff., v. G. W. McMillen, county clerk of Neosho county, deft.' Affiant further states that said Butler was only the nominal plaintiff, and the town of Osage Mission the real plaintiff and party in interest. And the said McMillen, the county clerk of Neosho county, was only the nominal defendant, and the town of Erie in said county the real defendant and party in interest. Affiant further states that said action was brought and prosecuted for the express purpose of contesting the election had and held on the 26th March, 1872, and especially the poll-book used at Erie precinct on said 26th March, which said election so had and held was an election for the purpose of relocating the county seat of Neosho county. Affiant further states that said action was duly tried, and was determined at the July Term of said court 1873, which more fully appears by said Exhibit A, hereto attached. Affiant further states that said judgment, determination and decree were duly had and given before the commencement of this present action. Affiant further states that the real parties in this action are the same, and not other and different from those in said former action, which judgment is now in full force and effect, and not reversed or modified."

Annexed to this affidavit, as said Exhibit A, was a "certified copy" of the journal entry of July 18th, 1873, in the *Butler - McMillen* case, showing the findings of fact, conclusions of law, and judgment. (The plaintiff in error in this case, *Stoddart*, claims in this court that the *original* "certified copy," offered and read in evidence as part of Walters' affidavit, although duly signed by the clerk, was not authenticated

with the *seal* of the district court.) To the reading of Walters' affidávit, and said Exhibit A, in evidence, before the district judge, plaintiff interposed at the time the following objection:

"The affidavit is incompetent, immaterial and irrelevant, and consists of statements of law, arguments and conclusions of law, and not of statements of facts; and said exhibit is incompetent, irrelevant and immaterial; that no plea or answer to the petition of plaintiff has been filed, that a plea in bar of this action could not be heard and determined at chambers; and further, neither said exhibit nor affidavit contains a transcript of the case of *T. H. Butler v. G. W. McMillen,* or any other case; that no foundation has been laid for the introduction of said testimony; that the pleadings in said case of *Butler v. McMillen,* were the only proper evidence of the issues in said case, and that the same should be introduced before said exhibit, and said exhibit is not any evidence of any fact in issue on the application for an injunction in this case."

Said objections were overruled, and the affidavit and exhibit were read. The judge refused a temporary injunction, and to obtain a review of this order *Stoddart* brings the case to this court.

*C. F. Hutchings,* for plaintiff in error:

The case presents for consideration by this court the following questions: 1st, Where the verified petition under § 5, page 192, laws 1871, states a cause of action, and is supported by affidavits, can the judge, on application, before answer is filed, refuse to grant a temporary injunction? 2d, Can the judge at chambers, on such application, hear and determine the merits of the case on affidavits, and by refusing a temporary injunction, thereby refuse to permit plaintiff to contest the election *in the court* on evidence? 3d, Can the defendant on an application at chambers for a temporary injunction, before answer, in a proceeding under the above statute, set up a plea in bar, as an estoppel by former judgment? 4th, If so, is the affidavit of Walters, that the case is *res adjudicata,* evidence of that fact, even though it be accompanied by what purports to be a copy of a judgment not even certified under

the *seal* of the court? 5th, Is a copy of a judgment even though duly certified, under the seal of the court, or proved, sufficient evidence, without the pleadings or any other part of the record to sustain a plea of *res adjudicata?* 6th, Is a judgment in the case of *Butler v. McMillen* a bar in action between Stoddart v. Vanlaningham, where there is no privity between the parties to the two actions? 7th, Is a judgment in an action to contest an election on the ground that the poll-books returned from Erie precinct *are forged,* a bar to an action to contest the same election on the ground that "John Snobb," and 167 others whose names were returned on the poll-books of Erie precinct, are fraudulent voters? 8th, Are the rules of evidence so much less applicable to proceedings before judges at chambers, than before judges and juries in term, that affidavits containing mere conclusions of law and nothing else, (such as, "the election in Erie was conducted according to law," and transcripts of courts of record certified *without seals,*) can be read against objection?

1. The law of evidence is equally as binding on judges at chambers as in term. Besides the formal part of the affidavits (except that of Walters,) they contain nothing but a mere conclusion of law, to-wit: "the said election was conducted according to law." This is never competent evidence. If the affidavits contained *any* competent evidence, it might be said the judge could and would be presumed to consider only that which was competent, but as no part of these affidavits was competent, we must believe that the judge considered the statement, "that the election was conducted according to law," as competent and sufficient evidence that the votes cast at the election were legal. And, if he did consider such affidavits as competent evidence, is there any doubt that we were prejudiced? There was no question raised as to the legality of the election, but only as to the legality of certain votes. The affidavits of C. C. Miller and others, were introduced, we suppose, to affect the credibility of plaintiff's witnesses, whom they disputed. We claim that these affidavits were incompetent because the judge is not, under the law, author-

ized to try the case at chambers.   This proceeding to contest the election is an anomalous statutory proceeding, and must be construed and carried out so as to effect the result intended. The election is to be contested by *the court*, and not by *the judge*.   If the judge at chambers refuses to grant a temporary injunction, it is useless to have any such proceeding, for the officer removes, and a judgment against him on final hearing, is fruitless.   The object of this proceeding is to prevent officers from moving until the election is contested.   The plaintiff is required to verify his petition, and set forth the names of alleged illegal voters.   It is clearly intended that any party filing the proper verified petition may contest the election, and a temporary injunction shall issue *of course* on a *prima facie* showing, otherwise the law is futile, as the judge may say, "You shall not contest the election; I will try this case at chambers, and decide on the preponderance of affidavits, and you shall not go into court where you can subpœna witnesses."   The refusal of the temporary order is simply a denial of the remedy pointed out by law, and the attempt to try the case by affidavits is simply a farce.   To so construe the statute, is to say, that a person may contest the election and have the benefit of an injunction to keep matters in *statu quo* until the final decision, provided he can produce more affidavits before the judge than the other party.   The object of contesting the election is, to ascertain which place received a majority of the legal votes; but the theory of the district judge was, that you must prove which place received a majority of the legal votes before you can be allowed to contest.

2. But, surely, even if the judge at chambers could hear and determine the truth of the petition upon the preponderance of affidavits, he could not hear and determine the truth of *a plea in bar by the defense*, before answer, on affidavits, or any other testimony.   While in ordinary applications at chambers for temporary orders the truth of the motion or petition will be heard and determined, we believe it has never been the practice, and would be destructive of the rights of

all plaintiffs in such applications, if the defendant before an-
swer, and without notice, could set up a temporary plea in
bar which depends upon record testimony almost entirely for
proof or rebuttal, and require the truth of it to be deter-
mined. Again, no provision is made for the production of
other evidence than affidavits on an application for injunction.
The code by implication says affidavits alone shall be used on
applications; (Civil Code, § 249;) hence the plea of *res adju-
dicata* could not be interposed in an application at chambers,
and the admission in evidence of the affidavit of Walters,
and the pretended record of a judgment, was error.

But, reasoning from the hypothesis that any defense may
be made by affidavit on a motion at chambers for a temporary
injunction, that could be made to the action, and that the
application is fully tried on the petition and temporary
defense, and decided on the preponderance of affidavits *and
other testimony*, or, in other words, that the case must be tried
once at chambers on the petition and whatever defense the
caprice of counsel may suggest, and again, (if the application
is sustained,) in term, on the petition and perhaps some other
defense, or many others, is the evidence offered in this case,
in support of defendant's plea, sufficient to sustain such plea?
"Estoppels are not favored in law. That a party alleging
them can take nothing by intendment, argument, or infer-
ence, is well established." "No presumption should be
indulged in favor of an estoppel which is designed to con-
clude a party by excluding evidence of the truth." (11 N. Y.,
420; 1 Greenl. Ev., § 528.) The affirmative of the issue was
on defendant. He must make a clear case, that *the precise
point in issue* had been once adjudicated between the same
parties or their privies. How could he prove, or how could
the court determine, what (if anything) had been adjudicated
without the pleadings? The judgment, or decree, proves
nothing of itself. "It is a very familiar principle, that the
judgment concludes the parties only as to the facts covered
by it, and the facts necessary to uphold it, and although a
decree in express terms professes to affirm a particular fact,

yet if such fact was immaterial (under the pleading,) and the controversy did not turn upon it, the decree will not conclude the parties in reference to that fact." (38 N. Y., 65; 14 N. Y., 465.)

The defendant and the district judge were undoubtedly misled in reference to the sufficiency of *the judgment* alone, as evidence. In New York, where the question has frequently recurred, the books speak of a "judgment record." This, as all lawyers familiar with the New York practice know, is not merely the "judgment," but contains *the pleadings*, and every step taken in the case. It is precisely such a record as is described by § 417 of our civil code, Gen. Stat., page 707. This "complete record," as it is usually called in this state, is made only by order of the court. In New York such a record is made in every case, and is called a "judgment record." And where the books speak of such evidence being introduced to support the plea of *res adjudicata*, it means not the judgment *alone*, but all other matters necessary to make a "complete" or "judgment" record as above described. A judgment, we contend, is conclusive on nobody as to any questions except those legally raised by the pleadings. The judgment must respond to the issues legally made in the case, and if it goes outside of this it is not conclusive; hence it must be shown, "either that the matter *was actually determined in the former suit*, or that it might have been litigated *under the issue then joined*." (25 N. Y., 616; 6 Iowa, 339; 26 Ind.) In the case at bar, it was not shown what the issues were.

3. But the copy of the judgment was not even *legally certified*, but was attempted to be proved by the affidavit of Peter Walters. The affidavit of Walters is a novelty. It does not state, properly speaking, a single fact. It is a summary of the law of the case, sworn to by him. Why should a learned judge occupy the bench to determine abstruse legal controversies, if *Peter Walters* can settle all these disputed questions of law in an affidavit of five folios? It must be evident that the judge either considered the pretended copy

3—14 KAS.

of the judgment as importing absolute verity, and concluding the plaintiff as to everything recited therein, or must have considered Walters' affidavit as conclusive of the law and fact, or he *must have taken judicial notice of what was adjudicated,* (which is insisted upon by defendant's counsel.) In either case the error is glaring. *Fitzpatrick v. Gebhart,* 7 Kas., 44, shows the practice in this state as to introducing the pleadings, etc. *The People v. Johnson,* 38 N. Y., 63, as to "judgment record," shows the pleadings were in evidence, and from them the court said the judgment, there offered, was *res inter alias acta.*

4. But admitting, *arguendo,* that the affidavit and exhibit of Walters proves the judgment in the case of *Butler v. McMillen,* does that judgment create an *estoppel* against plaintiff in this case? If the pleadings and record in *Butler v. McMillen* were before the court, it would not be difficult to show that *the only question* tendered by plaintiff in that case, as held by the court on the trial, was this: "Were the poll-books used at the election in Erie township destroyed, and *forged and altered ones substituted* and transmitted to the county clerk?" No names were set forth in the petition as illegal voters; the question was not, *whether illegal votes were cast,* but *whether the poll-books were forged.* We claim that the petition in that case does not state a cause of action under the statute. If the petition did not set forth the names of alleged illegal voters, it was not sufficient under the statute. The statute is simply for the purpose of contesting the question of illegal voting — it does not pretend to furnish a remedy by declaring the poll-books spurious. If there were no poll-books, or if the original ones were lost, the court would not declare the election void, but would go behind the poll-books to the election and ascertain how many legal votes were cast for each party. (*Morris v. Vanlaningham,* 11 Kas., 269.) Hence, the allegation that the original poll-books "were lost," is not sufficient, especially, under a statute which requires the names of alleged illegal voters to be set out under oath. If the court had no jurisdiction, or the pleadings did

not state a cause of action, the judgment is void, and is no adjudication. (6 A. L. Reg., 100; 12 Metcalf, 387; 11 N. H., 156.) The above facts, of course, do not appear by this record, nor can we ask this court to take judicial notice; but we claim that enough is fairly deducible from the judgment and findings to show that the questions involved in the two cases were not identical, or even similar. Taking all the findings in the Butler-McMillen suit concerning Erie precinct, and it will be seen that the only question decided is as to the *poll-books*. Not a single word is said as to *illegal votes;* and no finding upon that question, as far as Erie township is concerned, is made. If any such question had even incidentally been raised by the pleadings, of course, some finding would have been made concerning it. When we come to the conclusions of law we have this: "That the *election* held in the precinct of Erie, on said 26th of March, was in conformity to law, and *the returns* from said precinct were properly transmitted to the clerk of said county." And this: "That as far as appears from the evidence, the determination of said * * * canvassers * * * was * * * in conformity to law." Nothing is said about illegal votes; and *the question of illegal voting* was not raised by the plaintiff, or even incidentally passed upon by the court, so far as Erie township is concerned. There is no identity then between the question adjudicated in *Butler v. McMillen,* and the question sought to be adjudicated in this case. In order to avail himself of this defense of *res adjudicata,* the defendant in error must *show,* without the aid of presumptions or inference, that the identical question has been adjudicated. Simply because the court determines in one case upon certain issues that Erie is the county-seat, does not conclude *every question involved in that proposition,* but simply *the question* determined in the particular case in order to arrive at such conclusion. To illustrate: a finding that the poll-books returned from Erie were not forged, does not determine whether John Snobb is a legal voter or not. A finding in one case that a will, though duly executed, was not in conflict with the statute, where the action

was to have the will so declared, does not estop the same parties in another suit from raising the question of the due execution of the will. (*Mason, Ex'r, v. Alston,* 9 N. Y., 28; Freeman on Judgments, 224, § 259; 45 Ala., 262; 3 Wis., 304; 37 Conn., 102; 12 Q. B., 576; Dudley, 254; 2 Cart., 273; 8 Pick., 113; 4 Sumner, 416; 4 Mass., 255; 27 Ind., 451.) In the case of *Butler v. McMillen,* the evidence was as to the forgery of poll-books; in this, as to the competency of John Snobb and 167 others to vote at the county-seat election. Would the evidence in one case sustain the issue in the other? In *Doty v. Brown,* 4 N.Y., 71, it is held that the question must be "directly involved in the suit," in order that the judgment thereon shall be a bar in a second suit "between the same parties," and that proof *aliunde* is proper and necessary where the pleadings or judgment is indefinite. This is the tone of every decision in that or any other state; and we challenge the production of a respectable authority that militates against it, or holds that a proposition affirmed by a judgment is conclusive between the same parties in another suit, unless such proposition was directly in issue under the pleadings in the first suit. (1 Greenl. Ev., § 528; 22 Iowa, 368.) Would an adverse judgment in an action contesting the election on the ground that Erie was not within the limits of the county, be a bar to an action to contest the election on the ground of fraudulent voting? Would an adverse judgment in an action to contest on the ground of illegal votes cast in Chetopa township, be a bar in an action to contest on the ground of fraudulent voting in Erie? If not, then why should an adverse judgment in an action to have certain "returns" declared spurious and forged, be a bar to an action to show that illegal votes enough were cast to change the result of the election? This court in *A. T. & S. F. Rld. Co. v. Comm'rs of Jefferson County,* 12 Kas., 127, (following *Benz v. Hines,* 3 Kas., 390,) have said, that "to make a matter *res adjudicata* there must be concurrence of the four conditions following, namely: 1st, identity in the things sued for; 2d, identity in the cause of action; 3d, identity of *persons*

*and parties* to the action; 4th, identity of the quality of the persons for or against whom the claim is made." Has the defendant brought himself within these requirements? There is no identity of parties. The statute, § 5, page 192, laws of 1871, gives "any elector or electors" the right to contest the election. The maxims, *nemo debet bis vexari pro una et eadem causa,* and "that the judgment of one court directly upon the point is, as a plea, a bar, between the same parties upon the same matter directly in question in another court," (Broom's Legal Maxims, 321, 328,) are of no more force than the other, "that a transaction between two parties ought not to operate to the disadvantage of a third." Greenleaf says that parties in this connection includes "all who are directly interested, and had a right to make defense or to control the proceedings, and appeal from the judgment. This right also involves the right to *adduce testimony* and to *cross-examine.* Parties not having these rights are strangers to the cause." (1 Greenl. Ev., §§ 522, 523.) Tested by this rule, is Stoddart concluded? The doctrine of estoppel was never intended as an instrument wherewith by artifice, cunning inferences, and sophistical presumptions, to weave a web in which to imprison truth. Stoddart had no notice of the action of *Butler v. McMillen.* Butler was not a public officer, representing the interests of Stoddart, his constituent; nor did he have any interest in common with Stoddart, so far as the record shows. Stoddart had no more control over, or opportunity to be heard, to introduce testimony or cross-examine, or to appeal from the judgment in the case of *Butler v. McMillen,* than Walters, or any other stranger. Stoddart, upon his application for an injunction at chambers, was confronted with a pretended judgment in a case to which he was as much a stranger as the Sultan of Turkey, and it was sought to conclude him thereby. When he examined that judgment, he did not even find it certified under the seal of the court in which it purported to have been rendered. When he inquired what the issues may have been in that case, no pleadings were presented, but he was informed that every fact which was

affirmed by the decree therein, whether in response to questions presented by the pleadings or not, was binding and conclusive on him. He had not been notified by the filing of an answer or otherwise, that such a defense would be made to his application. When Stoddart inquired who the man Butler might be, that it was claimed had represented, and in another action concluded him, he was pointed to the affidavit and exhibit of Peter Walters, but found nothing to show whether Butler was a citizen and elector of Neosho county; and for aught the affidavit of Walters, the findings, judgment, and other evidence, disclosed, Butler may have been a citizen of Erie, whose interests were directly antagonistic to those of Stoddart, or he may have been a non-resident of the county.

We submit that the order·of the judge refusing the temporary injunction, and thereby sustaining the plea of *res adjudicata* at chambers, was so totally at variance with the enlightened and equitable doctrine of estoppel, and is based upon such unfair and unsatisfactory evidence, that the order should be reversed.

*Carpenter & Jones*, and *John T. Voss*, for defendant in error:

This is another county-seat case, growing out of the same election, and has the same objects and purposes in view. Each was commenced and prosecuted by the friends and supporters of Osage Mission, which point by a multiplicity of.suits, and some legerdemain, has succeeding in holding the county-seat at Osage Mission for nearly two years, against the declared wishes of the people.

This action was not commenced until the Butler-McMillen case was all heard, and determined in the district court. That was an action, as the court will see by a view of the records, brought by Butler v. McMillen, for the express purpose of contesting the election held on the 26th of March, 1872; and the prayer of the petition was, among other things, that Osage Mission be declared the county-seat of said county; but the very object of said action was to ascertain which

point was legally elected to be the county-seat—Erie, or Osage Mission. And the court, after sore trouble and mature deliberation, held and decided that Erie, and not Osage Mission, was the shiretown of said county. Now in that case McMillen (the defendant) was successful, and that case decided the very thing to be decided in this case. We make the point, that under the statute of 1871 but one contest can be had, no matter who the nominal parties to the record are; that the real parties in interest are the candidates that were voted for, to-wit, Erie and Osage Mission—unless perchance it may be said that the friends and supporters of each place are the real parties in interest, which of course does not alter the proposition, because each point is represented by the mere nominal party on the record, which in this case happens to be for plaintiff, A. B. Stoddart—and it might have been any other qualified citizen of said county; but it happened to be Stoddart instead of its happening to be some other person whose qualifications were in some respects the same. Now, when Stoddart commenced this action, he represented and was the next friend of every party in said county who favored Osage Mission for county-seat; and his action was equally binding upon others as well as himself. The nominal defendant is a mere accident. Had any other citizen held the same official position as this one, he, and not this nominal defendant, would have had the pleasure of having his name marked high on the escutcheon of fame, free of charge.

Our view of this case is, that we have sufficiently raised the question of *res judicata*, as to utterly preclude the plaintiff, or any other citizen, from maintaining this or any other second action. Can it be possible, that the proper construction of this statute can be, that when any citizen has commenced and carried on any action under the county-seat act of 1871, against any county official, that so soon as he is done any other one, or as many as may elect so to do, can commence and carry on another? If so, in one case a plaintiff may be successful, in another the defendant may be successful, and in the next the plaintiff may again be successful,

and so on alternately until the court records may be plastered all over with varying judgments and decrees — one declaring one point the county-seat and another the other point, and so you may have many decrees of equal validity, declaring each point the county-seat of the same county.   Under the statute, if such be its construction, a citizen of one point may apply to the court for a writ of mandamus against a county clerk, and a citizen of the other point against the same officer by injunction, and in both cases, should the plaintiffs be successful, the officer would be compelled to hold his office at both points, or be in constant contempt of the court, and in constant contempt of the court as to one of the points all the time.   This is what this action, if maintained, leads to.

But, says plaintiff, if your theory of this case be true you cannot raise this question at chambers; that it is trying the main case on its merits and upon affidavits, and this the law does not allow.   Then suppose for a moment that plaintiff is right in his view, and that the plea of *res judicata* cannot be interposed at chambers, nor at any other time when plaintiff is applying for an injunction, then the effect, or the practical effect, will be precisely the same.   Now for an illustration: Very frequently, and nearly always, what a point wants, particularly when it is the point at which the county-seat is when the election is held, is, some means by which it can still hold the county-seat, after the election is over, a long time against the legally-expressed will of the people.   Well, this is just the case with the friends of Osage Mission.   Now you cannot raise the question, when a party is applying for an injunction, nor upon a motion to dissolve, but only upon and after a full and fair trial, which takes and means about eighteen months in Neosho county; and just as soon as one plaintiff is beaten, another opens up his battery, and another eighteen months is consumed in settling and determining a question which all know just how it will be decided.   Yet we must wait until the slow process of the court is gone through with — rather had we not better say the farce of a trial?

The injunction in this case was rightfully denied.   It was

sufficiently shown to the judge at chambers that a judicial battle had been fought between the real plaintiffs and defendants herein, and that a victory had been lost on the one side and gained on the other. In this action they renew the same battle, attempting to fight the same cause over with a change of officers as plaintiff and defendant. Now we ask, who were the real parties in interest in this fight and suit? The answer can only be, Osage Mission on the one side, and Erie on the other. Now just what does appear to be the best mode of raising this question does not so readily appear, but we think the affidavit of Peter Walters, accompanied by the judgment and decree rendered in that case, does seem to fairly raise the question, and this decree is presumed to be a proper response to the issues in said cause. Besides this answer to plaintiff's application for injunction, we think the proof by affidavit beats them, and outweighs plaintiff's affidavits and proofs.

Again: The statute, in this case, provides that both parties may set up any and all votes alleged on either side to be fraudulent and spurious; or legal votes that may have been properly offered at the various polls in the county and rejected. Now take the case which is pleaded in bar of this action, and say defendant in that action, having set up all the votes he claimed that were fraudulent as against him, and all that he claimed were legally offered for him and rejected, would not these votes have been *res judicata,* and could he again use them in another action? If he used them in the first, these proper votes being rejected and these fraudulent ones being received, would, as a rule, be the very votes that would change the result of the election. Now in the first action the votes above mentioned might be just what changed the result, and of course if they were not and could not be used in this case, the want of their use would again change the result of the suit in favor of the other place. This result must be reached, or the same votes could be adjudicated a thousand times just as well as to be used a second time. Once admit the principle that they can be used a second time, and no good reason can be given why

they could not be used *ad infinitum.* The principle contended for by the plaintiff would never end a county-seat contest.

The main question to be determined in this court is, was plaintiff entitled to his injunction upon the papers and evidence as set out in the record herein filed? We think anything can be shown by defendant upon plaintiff's application for injunction, which will defeat plaintiff's right to an injunction. The law will not take a circuitous route when the same thing can be accomplished directly. Courts of equity have ample powers in such emergencies, and will look well to the great interests involved, and act in accordance with justice to all concerned. It would not be stating the case too strongly to say, that the judge of the district court could take judicial notice of the former case, it being a public record of his own court, and notice to the world as such record.

The opinion of the court was delivered by

VALENTINE, J.: On March 12th, 1872, an election was held in Neosho county for the relocation of the county-seat of that county. No place received a majority of all the votes cast, but the towns of Erie and Osage Mission were the two towns which received the greatest number of votes. On March 26th a second election was held for the relocation of said county-seat, at which election the towns of Erie and Osage Mission were voted for. The returns of the election were duly canvassed by the board of county commissioners, and it was determined by them that the town of Erie had received a majority of all the votes cast at said election, and that said town of Erie had thereby become the county-seat of said county. Thomas H. Butler, a friend of the town of Osage Mission, felt aggrieved at the decision of the board of county commissioners, and commenced an action in the district court of said county, under ch. 79 of the laws of 1871, to contest said election. He commenced his action under § 5 of said act, against Geo. W. McMillen,

*Statement of the case.*

county clerk of said county, to perpetually enjoin said county clerk from moving his office from the town of Osage Mission to the town of Erie. The action was prosecuted and defended in good faith, and finally determined by the district court in favor of the defendant and in favor of the town of Erie. (The case was afterward brought to this court, and is reported in 13 Kas., 385.) The case was determined at the July Term of the district court in 1873. Immediately after said case was determined the present case was commenced. It seems that the plaintiff in this action, A. B. Stoddart, who is also a friend of the town of Osage Mission, also felt aggrieved at the decision of the board of county commissioners in declaring the town of Erie to have received a majority of all the votes cast at said election, and in declaring said town of Erie to be the county-seat. He therefore also commenced an action under said § 5 of the act of 1871 for the purpose of contesting said election. He made R. J. Vanlaningham, register of deeds, the defendant, and prayed for a perpetual injunction to restrain said defendant from moving his said office from the town of Osage Mission to the town of Erie. He also asked for a temporary injunction to restrain said Vanlaningham from moving his said office until said action could be finally heard and determined. The court below required notice to be given to the defendant of the application for said temporary injunction. Notice was so given, and the application was heard by the judge of the district court at chambers on affidavits and other evidence on August 5th and 6th, 1873. At the time of hearing, the defendant had not yet answered the petition of the plaintiff. The judge refused to grant said temporary injunction, and the plaintiff now brings the question here for review.

Did the judge of the court below err? We think not. On an application for a temporary injunction, when notice of the same has been required to be given to the defendant, and notice has been so given, the defendant may, on the hearing of the application, and even before answer filed, introduce any legal evidence

1. Injunction: evidence on motion for.

that would tend to show that the injunction should not be granted. He is not confined to evidence that merely tends to disprove the allegations of the plaintiff's petition. Indeed, it has been held that a party applying for a temporary injunction has no right to withhold or omit facts important for the court to know in granting the injunction. (Joyce on Injunctions, 1263 to 1266, 1306; High on Injunctions, §§ 990, 991.) It seems everywhere to be held that the granting or refusing of a temporary or preliminary injunction rests largely in the sound judicial discretion of the court or judge to whom the application is made. (Hilliard on Injunctions, page 15, § 17.) And it would seem in England, that "in granting an injunction the court is bound to consider the amount of injury which may be thereby inflicted on strangers to the suit, and third parties." (1 Joyce on Injunctions, 497.) In the case of the *N. Y. Printing and Dyeing Establishment v. Fitch*, 1 Paige Ch., 98, Chancellor Walworth uses the following language: "There are many cases in which the complainant may be entitled to a perpetual injunction on the hearing, when it would be manifestly improper to grant an injunction *in limine*. The final injunction is in many cases matter of strict right, and granted as a necessary consequence of the decree made in the cause. On the contrary, the preliminary injunction before answer is a matter resting altogether in the discretion of the court, and ought not to be granted unless the injury is pressing, and the delay dangerous." And injunctions are often allowed to prevent a multiplicity of suits. In this case it would seem that the plaintiff is in favor of a multiplicity of

2. County-seat contest, where questions have been decided in another action.

suits, and wants the court to assist him therein by allowing a temporary injunction. Now, after the main and substantial question in this case, the question whether Osage Mission or Erie is the county-seat of Neosho county, has been twice decided against the plaintiff, once by the canvassing board and once by the district court after a full and fair trial in an action litigated in good faith by both sides, we think it would be at least an abuse of judicial discretion for the court or judge to allow a temporary

injunction to restrain a county officer from moving his office to the place so declared to be the county-seat, merely for the purpose of keeping the office at the old county-seat while the plaintiff should again litigate the question as to which place is the county-seat. The minor issues in the case of *Butler v. McMillen* were in some respects different from the minor issues in the present case, but still the main issue was the same in both cases.

The order of the judge of the court below, refusing to grant said temporary injunction, is affirmed.

All the Justices concurring.