Argued at Pendleton October 30; affirmed December 19, 1939

## STANGIER *v.* GOAD ET AL.

(97 P. (2d) 191)

In Banc.

C. Z. Randall and John F. Kilkenny, both of Pendleton (Randall & Perry and Raley, Kilkenny & Raley, all of Pendleton, on the brief), for appellant.

C. C. Proebstel, of Pendleton (A. C. McIntyre, District Attorney, of Pendleton, on the brief), for respondents.

LUSK, J. Plaintiff brought this suit to obtain a decree enjoining the defendants, the sheriff and district attorney of Umatilla county and the chief of police of the city of Pendleton, from seizing and destroying certain personal property. The defendants filed a demurrer to the complaint, which was sustained by the Circuit Court, and, the plaintiff having refused to plead further, a decree of dismissal was entered from which the plaintiff has appealed, assigning as error the ruling on the demurrer.

The complaint alleges that the plaintiff "is the owner of certain vending machines and games of skill described as follows, to-wit,—A Flasher, Railroad Game, Mint Vending machines, Ten Grand, and Golden Wheel, some of which are in use and some of which are in storage,—and which said machines are used solely for the stimulation of sales of merchandise and are games of skill only and not games of chance, and from the use of said machines the plaintiff derives a profit so that the said machines are to plaintiff a valu-

able property, and the same are not in anywise a gambling device."

The complaint further alleges that, "acting under the provision of Section 3 of Chapter 492, General Laws of Oregon for the year 1937", "the defendants, and each of them, are threatening to, and will, unless restrained by this Court, seize and destroy the machines of the plaintiff above described without the issuance of any process of any court and without this plaintiff having any day in court in which to defend himself and his property, and that such threatened action will result in the destruction of plaintiff's property without due or any process of law, and such threatened action is in violation of the constitutional rights of this plaintiff."

It is alleged that the said Chapter 492 is unconstitutional, but that the defendants assert authority to seize and destroy plaintiff's machines under the provisions of Chapter 210, General Laws of Oregon 1937. Both of these statutes make unlawful the possession, operation, etc., of various gambling games and devices, and provide for their seizure and destruction by the authorities.

The complaint contains the usual allegations as to irreparable injury and the want of an adequate legal remedy.

The sole question is whether the complaint states a good cause of suit for an injunction.

■ Since the plaintiff is seeking the aid of a court of equity to obtain the extraordinary remedy of injunction, his complaint, to be sufficient, must exhibit "candor and frankness." 32 C. J., "Injunction", 325, § 537. "That eminent good faith, which is a prevailing principle in courts of equity, requires that the statement

thus permitted should be fairly made, without attempt at suppression or evasion. When this is not done, it leaves room for very great uncertainty in the mind of the court, when seeking to ascertain the true import of the allegations made in the bill''. *Garrett v. Lynch*, 44 Ala. 683. ''A fair and candid disclosure of all the facts must be made''. *McDowell v. Biddison*, 120 Md. 118, 128, 87 Atl. 752. The plaintiff ''should not only show his hand but open it wide''. *Headley v. Chester*, 22 Pa. Dist. 900. ''There should be no misrepresentation or concealment or keeping in the background important facts of which the court ought to be advised, and which the court thinks are material in order to form its judgment.'' *Moffat v. Calvert County*, 97 Md. 266, 270, 54 Atl. 960. To the like effect, see *Stoddart v. Vanlaningham*, 14 Kan. 18, 36; *Gates v. Sweitzer*, 347 Ill. 353, 179 N. E. 837, 79 A. L. R. 1151.

Does the present complaint measure up to these requirements?

■ There is no description of the so-called games or vending machines, or of the method of their operation. The fact that they are referred to as ''games'' indicates that they are different from the ordinary legitimate vending machine which returns to its patron an article of merchandise—presumably his money's worth—in exchange for the deposit of a coin. A machine of that kind is not a game, and is never referred to as such; but we do know judicially that there are forbidden devices which go euphemistically under the name of vending machines, but which are in fact gambling devices, such, for instance, as certain types of slot machines.

If we may regard the allegation that the plaintiff's machines are ''games of skill only and not games of

chance'' as anything more than a conclusion of law on the part of the pleader, it still remains true that, being games, there is at least a probability that they may be used as games of chance. The only reference to their use is the following: ''and which said machines are used solely for the stimulation of the sales of merchandise.'' This is an ambiguous statement, which does not inform us how the machines are used, but of the purpose for which they are used; and there is not in the complaint an unequivocal allegation that the machines are not, and will not be used, as gambling devices. The quoted language, moreover, has suggestive implications. It is reminiscent of the argument used at the last general election by the proponents of the proposed constitutional amendment ''Legalizing Certain Lotteries and Other Forms of Gambling'' (see Official Voters' Pamphlet for the General Election of November 8, 1938, p. 45), wherein certain gambling devices, among others ''vending machines'', are referred to as ''trade stimulators''.

If the plaintiff's machines are games of skill, the court is interested in knowing, and is entitled to be informed by the complaint, how they are played. What does the player do that constitutes an exercise of his skill, and what occurs after he exercises it? Does he receive a reward for being skillful, or does he play simply for the pleasure of playing, as in the case of the game of billiards, for example? If he receives a reward, what relation does it bear to the cost of playing, and what factor determines the amount? If, on the other hand, the vending machines are truly such, what do they vend, and does the patron receive merchandise which has some substantial relation in value to the price he pays?

As to these matters we are left in the dark, and after a minute inspection of the complaint, we have only the vaguest notion concerning the real character and use of these "vending machines", which are "games of skill and are used solely for the stimulation of the sales of merchandise."

The statute under which the plaintiff alleges that the defendants intend to proceed provides in its first section that "regardless of whether their operation requires an element of skill on the part of a player, all games of chance, such as slot machines, dart games, pin ball games, and/or similar devices or games, when operated or played for a profit, either in cash merchandise or other article of value, hereby are declared unlawful, and their licensing, possession, display, operation or play are hereby prohibited", and by its third section makes it the especial duty of certain officers "to confiscate such without delay, destroy all such games when possessed, displayed, operated or played in violation of the terms of this act." (Ch. 492, Oregon Laws 1937.)

The statute under which the complaint alleges that the defendants assert authority to seize and destroy the plaintiff's machines also makes unlawful the possession, operation, etc., of "any nickel-in-the-slot machine or other device of like character whereby, upon deposit therein of a coin, slug, token or other thing representative of value, such machine may vend or dispense any merchandise, money, check, token, slug, credit or other representative of value or evidence of winning in varying quantities or values, depending upon chance, or whereby there may be received at any time in exchange for such deposit, at occasional or uncertain intervals or in varying quantities or value, from time to

time, depending upon chance, any money, check, slug, token, credit or other representative of value or evidence of winning which may be exchanged or redeemed for anything of value, or which may be deposited in such machine or device for further operation or play with the chance of winning or receiving additional merchandise, money, check, token, slug, credit or other representative of value or evidence of winning, and which machine may or may not indicate in advance of such deposit what it will vend or dispense." (Ch. 210, Oregon Laws 1937.)

The Act further declares the machines prohibited to be nuisances, and makes it the duty of the sheriff to seize them "when found in the possession of any person violating this act" and "to hold the same subject to the order of the court having jurisdiction hereunder", and when it appears to the court that the machine or device is possessed, etc., in violation of the act, "said court shall adjudge forfeiture thereof and shall order the sheriff to destroy the same."

■ Chapter 492 is alleged to be unconstitutional because of certain defects in the title. One ground asserted is that the title "refers only to 'games of chance' ", while the act makes unlawful the operation of the machines or games "regardless of whether or not the operation of said games requires skill on the part of the player." If the plaintiff's claim that his machines are "games of skill only" is made in good faith, there is no reason for him to be interested in establishing the unconstitutionality of a law which does not affect "games of skill only", but only "games of chance", "regardless of whether their operation requires an *element of skill.*" His display of such interest casts doubt upon the genuineness of his claim.

■ His assertion that Ch. 210 has no application to his devices, because it includes within its scope only games of chance, and his failure to make the like assertion with regard to Chapter 492, which he seeks to have declared unconstitutional, suggests an awareness on his part that the latter act does apply and a natural inference to the court that, notwithstanding his earlier protestations to the contrary, his machines are "games of chance" whose "operation requires an element of skill." His allegation that the defendants, who are law-enforcing officers and entitled to the usual presumptions, assert authority to seize and destroy his machines under Chapter 210, which provides for a judicial determination before the destruction, renders uncertain and doubtful the allegation that the defendants will proceed, unless enjoined, under Chapter 492, which does not provide for such determination, there being no allegation that the defendants assert authority to proceed under the latter act. If the officers intend to proceed under Chapter 210, then the plaintiff is not entitled to an injunction, because in that case there would be a destruction of his property only after a judicial determination, and the plaintiff would be assured of an adequate remedy at law.

If the property of the plaintiff is valuable and innocuous as he claims, no valid law could possibly authorize its seizure and destruction, either summarily or otherwise; why then does he bring into his complaint statutes denouncing gambling devices, and seek to have the one declared unconstitutional and the other inapplicable?

■ From these considerations we are brought to the conclusion that the plaintiff has not stated his case with that candor, frankness and fullness of disclosure

that ought to characterize the pleading of one who seeks an injunction, and, particularly, an injunction in a criminal proceeding against the sworn officers of the law. We do not mean to imply a finding that the plaintiff's machines are gambling devices, or that they are used as such. We only mean that we do not know, and are unable to determine, from the information he has seen fit to give us, what the plaintiff's machines are, or in what way they are used. For all we know, they may be gambling devices, and if so, he is not entitled to equitable relief. *Enloe v. Lawson*, 146 Or. 621, 31 P. (2d) 171. The complaint "leaves room for great uncertainty in the mind of the court when seeking to ascertain the true import of the allegations made in the bill" (*Garrett v. Lynch*, supra), and, upon inspection, reveals marks of "keeping in the background important facts of which the court ought to be advised, and which the court thinks are material in order to form a judgment." (*Moffatt v. Calvert County*, supra.)

We think, therefore, that the circuit court committed no error in overruling the demurrer.

We are not to be understood by this decision as sanctioning any alleged right of the defendants—which upon the argument the district attorney disclaimed—to seize and destroy the property of the plaintiff, even though it be used for gambling, without an opportunity for a hearing. The courts are not in entire agreement on that subject, though it seems to be held by the weight of authority that instruments and apparatus used for gambling, but which may be used for different objects (as, for instance, a gaming table) or which may serve a purpose of harmless amusement, cannot be destroyed without notice to the owner: Freund, Police Power, 559, § 526. We do not, however, pass on

that question, but simply hold that the plaintiff has not set forth sufficient facts in his complaint to entitle him to equitable relief by injunction against the threatened acts of the defendants.

The decree of the Circuit Court is affirmed.

RAND, C. J., and ROSSMAN, BELT and BEAN, JJ., concur.

KELLY and BAILEY, JJ., not sitting.