Conley v. Fleming.

F. M. CONLEY v. JEFFERSON FLEMING, et al.

<table>
<tr><td>14</td><td>381</td></tr>
<tr><td>40</td><td>205</td></tr>
<tr><td>14</td><td>381</td></tr>
<tr><td>43</td><td>664</td></tr>
<tr><td>14</td><td>381</td></tr>
<tr><td>44</td><td>189</td></tr>
<tr><td>14</td><td>381</td></tr>
<tr><td>51</td><td>184</td></tr>
<tr><td>14</td><td>387</td></tr>
<tr><td>68</td><td>274</td></tr>
</table>

1. PRELIMINARY INJUNCTION; *Refusal; Doubtful Cases; Discretion of Court.* Though the allegations of a petition may be such as to entitle the plaintiff, if proved, to a perpetual injunction on a final hearing, and though the testimony on an application for a preliminary injunction preponderates in favor of all those allegations, yet if it appear doubtful what may be the facts established on the final hearing, and the right of the plaintiff is not likely to suffer serious injury unless immediately enforced, it is often the duty of the court in the exercise of a sound discretion to refuse any preliminary injunction, and leave the rights of the parties to be determined upon the final hearing.

2. —————— The probable results of the final hearing, and the probable effects of a temporary restraining order upon the respective rights of the opposing parties, are proper considerations in determining the question of issuing an order.

3. COUNTY-SEAT PETITION; *False, Forged, and Spurious Names; Pleading.* Where application is made for a temporary restraining order restraining the county officers from removing their offices to a place

declared by the commissioners, as the result of an election therefor, the duly-chosen county-seat, and the ground of the application is the presence of forged names, names of minors, non-residents, etc., upon the petition for an election, and said petition is not presented to the court, nor a single name given as forged or improperly on said petition, and the only evidence of the fact is the general statement in plaintiff's verified petition, that the petition contained the names of two hundred non-residents, of fifty minors, of one hundred dead men, etc., and the plaintiff had had ample time to obtain more specific and direct testimony, and there is no showing of any special injury resulting from the removal; *held,* that it could not be affirmed, that the court erred in refusing such temporary restraining order.

4. COUNTY-SEAT ELECTION; *Second Election—Time.* Where two elections are necessary to determine the question of the county-seat, it is not essential that the last election be held within fifty days of the presentation of the petition therefor.

5. ———— *Place Selected.* In the selection of a county-seat, the electors are not limited to existing cities and towns, but may choose a site for a new town, and locate the county-seat thereon.

6. ———— *Name, or Description of Place.* If a certain tract of land is popularly and generally known by a specific name, the use of that name is a sufficient description; and a ballot with that name is not vitiated by the fact that in addition to the name there is an imperfect (but not contradictory) description of the land.

*Error from Linn District Court.*

IN February 1871 the county-seat of Linn county was removed from Mound City, and relocated at La Cygne. On the 1st of February 1873 the board of county commissioners, on petition therefor, ordered an election "to relocate the county-seat" of said county. An election was held on the 11th of March 1873, at which 2757 * votes were cast, of which 1093 were given for Pleasanton, 684 for Mound City, 972 for Farmer City, 7 for La Cygne, and 1 for Prescott. No choice. A second election was held March 25th, at which there were 2435 votes cast, of which 1183 were given for Pleasanton, and 1252 were given for Farmer City. The commissioners having declared that Farmer City had been duly

[* AT the general election in 1872, the total vote cast in Linn county, for Presidential Electors, was 2379; for Representatives, 2414. At the general election in November 1873, the total vote in said county, for Representatives, was 1863. See Wilder's Annals of Kansas.—REPORTER.]

elected as the county-seat, the county officers were ordered and directed to remove their respective county offices from La Cygne to Farmer City — whereupon *Conley*, a citizen and taxpayer at La Cygne, filed his petition for an injunction against *Fleming* and the other county commissioners, and all the county officers of said county, to restrain such officers from so removing their offices, and the books and records thereof, to Farmer City. A restraining order was granted by the district judge, Hon. M. V. Voss, on the 1st of April 1873, which order was by said judge, on the 22d of April, vacated and discharged. From this last order, vacating the restraining order, and refusing a temporary injunction, *Conley* appeals. No briefs on file.

*James D. Snoddy*, for plaintiff.

*W. R. Biddle*, county-attorney, for defendants.

The opinion of the court was delivered by

BREWER, J.: Two errors are alleged, first in refusing a continuance, and second in discharging a temporary restraining order. The case itself was one involving that question of frequent occurrence, the validity of a county-seat election. The application was for an order restraining the county officers from moving their offices to the place declared by the commissioners as the result of the election, the newly-chosen county-seat. On the 1st of April the petition for an injunction was presented to the judge of the district court. The 22d of April was by him fixed for the hearing, and a temporary restraining order granted to remain in force until the application could be heard. On the 22d of April the plaintiff moved for a postponement of the hearing, and a continuance of the restraining order, which motion was overruled, and of this plaintiff complains. It is well settled that these matters of continuance are largely within the discretion of the trial court. Here no abuse of discretion is apparent, but on the contrary the ruling was evidently correct. The petition alleged that several hundred of the names on the petition for

an election were improperly there, some forged, some the names of non-residents, minors, etc. The affidavit for the continuance, which referred solely to this matter, alleged that application had been made to parties to give voluntary information by affidavits as to these matters, but that these parties refused, and the testimony could only be obtained by deposition, and enforced attendance; but it did not show that any effort had been made to take a single deposition, nor did it give a single name improperly on the petition. It was moreover simply a statement upon information and belief. We think the court very properly overruled the application. *Brown v. Johnson*, supra, 377.

The other error alleged was in discharging the temporary restraining order. Here too we see no error, or at least nothing to justify a reversal. The grounds for holding the election illegal, presented in the petition, which was verified, were, first, that the petition for the election did not contain the names of three-fifths of the legal electors, several hundred of them being forged, those of minors, etc., as heretofore stated; second, that the two elections (for no place received a majority at the first election,) were not held within fifty days after the presentation of the petition; third, that the two places declared to have received the highest number of votes at the first, and therefore the sole competitors at the second election did not in fact receive the highest number, and were erroneously so declared; and finally, that there was no such place as that declared the chosen county-seat. In reference to these restraining orders *in limine*, it is to be borne in mind that it is not to be expected that the whole case will then be fully tried, so that the court may properly require that a clear showing be made of a right in the plaintiff to relief, and a right which may be seriously impaired unless immediately protected. Where it is doubtful what upon the final hearing may be ascertained to be the real facts of the case, and where the rights of the plaintiff are such as will suffer no serious injury if not enforced until the facts are finally and definitely determined, it oftentimes is the duty of the court, in the ex-

ercise of a sound discretion, to refuse an injunction *in limine.*
Otherwise, a defendant might be unnecessarily and improperly
restrained from doing that which he has a right to do, and
through such restraint suffer an injury for which no adequate
compensation is afforded. *Stoddart v. Vanlaningham,* ante,
p. 18; *Akin v. Davis,* ante, p. 144. Now in this case, while the
petition (which, being verified, was the principal evidence for
the plaintiff,) alleges that there were several hundred forged
names and names of minors, etc., the paper containing these
names is not presented, nor is there a single name given.
More than that, the verified answer of the county commis-
sioners denies this allegation of the petition. Whatever may
be said upon the sufficiency of the petition as a pleading, as
evidence it is not specific nor definite. Not only does it fail
to give any names, but also, by the even numbers used, it is
evident the pleader does not mean to be considered as stating
the facts exactly. Thus, he says there were the names of
"two hundred non-residents," of "fifty minors," of "one
hundred dead persons," that there were "three hundred forged
names," "two hundred fictitious names," etc. It is evident
from this that he did not have in his mind any specific names,
or any exact numbers, but was making his allegations large
enough to cover the expected proof, and to meet the necessi-
ties of his case. It may be remarked too, that there is no
showing of any special injury that would result to the plain-
tiff from the removal, or any grievous wrong to other parties.

So far as the matter of time is concerned, the petition was
presented February 1st, and the elections held on the 11th
and 25th of March, respectively. The first election was
within the fifty days. This we think is all the statute re-
quires. Gen. Stat., 297, § 5.

The two remaining allegations of the petition may be
considered together. The place declared the newly-chosen
county-seat is thus described in the proclamation of the
result: "Farmer City, situated as follows, 40 acres in S.E.¼
of N.W.¼ of sec. 14; 30 acres off the S.W. qr. of the N.E.
qr. of sec. 14, all in town 21, of range 23, in Linn county,

Kansas." Now it is alleged that at the time of said elections there was no such place as "Farmer City," and no city, town or village anywhere within the limits of said "section 14," and that at the first election some of the ballots counted as for this place contained the very words of the description in the proclamation, while others added on the word "and" between the words "sec. 14," and "30 acres;" and that classing these ballots as for separate places, neither of them stood first or second on the list of candidates. On the other hand it is alleged that prior to the first election the place designated and known as "Farmer City" was selected upon actual view, and placed in nomination as one of the places to be voted for, by a convention of five delegates from each of six townships, and that such selection was witnessed by two hundred or more persons from different parts of the county, and that the place so selected and named "Farmer City" became and was quite notorious, and at each of said elections was generally known and understood by the legal electors voting at said election. There seems to have been no dispute as to the facts thus alleged on the respective sides. If the majority of the electors of a county are unwilling to select any of the existing towns for the county-seat, but prefer to choose a new place, and start a new town therefor, we know of nothing to prevent them from so doing. Each elector is to give "the name of the place" for which he votes. This "place" may be an incorporated city, a village, or an unoccupied quarter-section; and if a majority choose a tract of unimproved prairie, the courts have no power to interfere and set aside their selection. The wisdom of such a choice may be questioned, but the power to make it is beyond dispute. Again, if a given tract of land is known by a specific name, the use of that name is a sufficient description. If a certain definite seventy-acre tract was generally known as and by the name of "Farmer City," the use of that term in a ballot was a sufficient description, and the ballot was not vitiated by a mere imperfection in a further description therein of the land. No greater precision or definiteness is necessary in a ballot than

in a deed. There was in these facts nothing to justify the court in continuing the restraining order. Upon the whole case therefore we cannot see that the court, in the exercise of a sound discretion, erred in discharging the temporary restraining order, and the judgment will be affirmed.

Probably the only matter affected by this decision is the question of costs, as, if the public press be reliable, subsequent elections have relocated the county-seat.

The order of the district judge is affirmed.

All the Justices concurring.