S. J. GILMORE, *Appellant*, v. THE ROYAL SALT COMPANY, *Appellee*.

No. 17,037.

SYLLABUS BY THE COURT.

1. NUISANCES—*Springs Contaminated by Percolation.* One has no right to accumulate upon his own land refuse matter of any sort, whether in itself offensive or not, by which the water underlying the land of a neighbor, and feeding springs thereon, is so affected through percolation as to be unfitted for its ordinary use or harmful to vegetation.

2. ―――― *Proof of Source of Contamination Establishes Right of Action.* Proof that a salt-mining company deposited a large quantity of refuse salt upon its land in such manner that by the action of the rain upon it the water underlying an adjacent tract was impregnated with salt through percolation, so as to render it unfit for use and harmful to vegetation, establishes a legal wrong against the owner of such tract.

3. ―――― *Injunction the Proper Remedy, if Equitable.* Whether in such case relief may be had by injunction depends upon the equities of the ·case, in view of the practical consequences of the wrong and the means available for its correction.

Appeal from Ellsworth district court. Opinion filed May 6, 1911. Reversed.

*Ira E. Lloyd,* and *N. F. Nourse,* for the appellant.
*T. L. Bond,* for the appellee.

The opinion of the court was delivered by

MASON, J.: In the course of its operations in mining rock salt the Royal Salt Company deposited upon its own land a quantity of refuse salt, which in a few years created a dump containing about 40,000 tons. S. J. Gilmore, the owner of an adjacent tract, claimed that the rain dissolved a part of this salt and by percolation carried it into the soil of his land, injuring the vegetation and imparting a saltish taste to a number of springs. He asked an injunction against the practice. He was denied relief and appeals.

The trial court found in effect that the consequences stated resulted from the maintenance of the dump, but concluded that the plaintiff was not entitled to an injunction, upon the specific ground that the common law is in force in this state and recognizes no correlative rights in percolating waters. The defendant maintains that in support of the general judgment it must be assumed that the court believed that the plaintiff suffered no substantial injury, or, at all events, none for which injunction is an appropriate remedy. We think, however, that the fair inference is that because of the view taken of the proposition stated no other matters were decided.

Frequent expression has been given to the theory that percolating water is to be regarded for all purposes as a part of the containing soil, and that the owner of the land has the absolute right to make whatever use of it he sees fit, without incurring liability to any one thereby injured. As a corollary some courts have held that he is exempt from legal responsibility even if from his act contamination results to the under-

ground water upon a neighbor's premises.   The decision in the present case appears to be based upon this view, and while it finds some support in the authorities we feel constrained to hold that whatever may be the rule as to the principal proposition, the application made extends it too far.

The tendency away from the older, or what is called the "English" doctrine, is exhibited in the two series of notes terminating in that to *Meeker v. East Orange,* 76 N. J. Law, 435, in 25 L. R. A., n. s., 465, and that to *Hathorn v. Natural Carbonic Gas Co.,* 194 N. Y. 326, in 128 Am. St. Rep. 555, 580.   In a note in 23 L. R. A., n. s., 331, it is said:

"While the earlier decisions laid down the general rule of absolute right in percolating waters, the great majority of the recent cases have receded from that view, and favor the doctrine of confining each landowner to a reasonable use of such water."

In *City of Emporia v. Soden,* 25 Kan. 588, 608, the court said that the strong, if not the principal, reason for the rule that the law takes no cognizance of percolating water is the impossibility of proving with certainty the sources of supply; and that case was held to furnish an exception to or limitation on the doctrine.

The present case, however, does not involve the right of a landowner to injure a neighboring owner by diminishing the supply of subterranean water by either a reasonable or an unreasonable use.   It turns upon his right to cause the water under his neighbor's land to be impregnated with a harmful substance.   Most of the courts and text-writers recognize this to be a matter controlled by different considerations, as is shown by these quotations, and the cases cited in their support:

"That the courts are not willing to adhere to the rule that a landowner may make such use as he pleases of his property, regardless of the effect on the subterranean water, is brought into prominent relief when the question of the right to pollute such water is

raised. Some of the courts are very willing to assert. that a landowner may maliciously deprive his neighbor of a water supply by pumping or draining it away, but at the same time they assert that he can not effect such deprivation by polluting the source of supply. It could not for a moment be conceded that there was a right to pollute the water, and the fact that there is no such right shows that the rights with respect to percolating waters are not absolute, but correlative, and that each landowner must, in using his property, see that he does not injure his neighbor. A landowner will not be permitted to collect upon his premises injurious or offensive material in a place where it will be likely to find its way, by the action of precolating water, into his neighbor's well. This rule applies to refuse from gas works, cesspools, and privy vaults, and manure heaps. An injunction will lie to prevent such injury." (3 Farnham, Waters and W. Rights, § 945.)

"In some few cases it has been held that as a landowner has the absolute right to appropriate the water percolating under his land, he is not liable for contaminating or polluting such water in the reasonable use of his own land, though thereby a well or spring upon the land of a neighboring landowner is polluted or contaminated. Still, since one who collects filthy or offensive matter upon his land is required to prevent its escape therefrom, and is liable in damages to neighboring landowners who are injured by the percolation of such matter through the soil, and since this liability does not depend upon negligence, but the reasonable precautions which the law requires must be such precautions as will effectually exclude the filth from the neighbor's land, it is generally held that a landowner is liable in damages if by the accumulation of filthy or contaminating matter upon his own land he contaminates the waters percolating therein to the injury of a neighboring landowner whose well or spring subsequently receives the percolating waters so contaminated; and injunctions have been granted to prevent such contamination." (30 A. & E. Encycl. of L. 319.)

"The weight of authority supports the rule that a person who, by permitting the pollution of his own soil or the water thereunder, contaminates his neighbor's well or the streams under the neighbor's land,

from which water is appropriated, is liable to the latter in damages, and in some cases the continuance of such pollution has been restrained by injunction." (16 A. & E. Ann. Cas. 676, note.)

"There is a manifest distinction between the right of the owner of land to use the underground water upon it that originates from percolation, or is found in hidden veins, and the right to contaminate it so as to injure or destroy the water when passing to the adjoining land of his neighbor. It is a familiar doctrine, that one must so use his property as not to injure his neighbor; and, because the owner has the right to make an appropriation of all the underground water, and thus prevent its use by another, he has no right to poison it, however innocently, or to contaminate it, so that when it reaches his neighbor's land it is in such condition as to be unfit for use, either by man or beast." (*Kinnaird v. Standard Oil Company,* 89 Ky. 468, 474.)

We regard it as well settled by the weight of authority, and in accordance with sound reason, that one has no right to deposit upon his land refuse matter of any sort, whether in itself offensive or not, by which the water underlying his neighbor's land may be so affected through percolation as to be unfitted for its ordinary use, or injurious to vegetation. The impregnation of a spring with salt may be a substantial injury. (*Collins v. Chartiers V. Gas Co.* 139 Pa. St. 111.) It follows that the evidence and the findings tended to show an invasion of the plaintiff's rights by the defendant. But whether the resulting injury is of such nature, in view of the means available for its prevention, as to require a remedy by injunction, is a matter upon which the trial court does not appear to have passed and could not well have passed after determining that no legal wrong had been committed. No order will therefore be made at this time further than that the case be again tried, applying the principles here announced.

The judgment is reversed and the case is remanded for a new trial.