<hr/>

No. 26,510.

John W. Asling, *Appellant*, v. McAllister-Fitzgerald Lumber Company, *Appellee*.

SYLLABUS BY THE COURT.

Landlord and Tenant—*Use of Premises—Cancellation of Lease for Nonuse.* In an action to cancel a lease on a lumber yard for want of occupancy and use by the lessee, and because the property through want of such occupancy and use is falling out of repair, and deteriorating in value, the lease and the allegations of plaintiff's petition examined, and *held:* (*a*) A fair interpretation of the lease discloses that the parties intended that the lumber yard should be occupied and put to such reasonable use as the premises are fitted to serve; and (*b*) that where a lease is silent as to use, the rights and duties of lessee and lessor are mutually reciprocal—the lessee has the right to put the premises to any lawful and reasonable use, and the lessor has the right to have the premises so used; and (*c*) *held,* also, that plaintiff's petition stated a cause of action good as against defendant's demurrer thereto.

Appeal from Dickinson district court; Cassius M. Clark, judge. Opinion filed March 6, 1926. Reversed.

*Paul H. Royer* and *S. S. Smith*, both of Abilene, for the appellant.
*Matt Guilfoyle, C. E. Rugh* and *Karl Rugh*, all of Abilene, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action to cancel a lease on a lumber yard. The lessor's grievance was that the lessee put the premises to no use, and because of want of use and occupancy the property was deteriorating, and insurance could not be obtained. A demurrer to the plaintiff lessor's petition was sustained and he appeals.

The contract of lease, in part, recited:

<hr/>

Cancellation of Instruments, 9 C. J. p. 1232 n. 80.   Evidence, 22 C. J. p. 1132 n. 90; 23 C. J. p. 59 n. 22.   Landlord and Tenant, 35 C. J. p. 1221 n. 68; 36 C. J. p. 50 n. 67, 72.   Pleading, 31 Cyc. p. 333 n. 76.

"This indenture, Made this 8th day of September, A. D. 1921, . . .

"Witnesseth, That the said party of the first part, in consideration of the rents and covenants herein specified, does hereby let and lease to the said party of the second part, the following-described premises, . . . in . . . Abilene, Kan., with the appurtenances, including the wagon scales located in adjoining parking, also including the coal; sheds as now located in the right of way . . . for the term of ten years, . . . at the monthly rental of sixty-seven and 50/100 dollars, payable monthly, in advance.

"Provided, That in case any rent shall be due and unpaid, or if default shall be made in any of the covenants, then it shall be lawful for the said party of the first part, or his attorney, to reënter into and repossess the said premises, and the said party of the second part, and each and every other occupant to remove and put out. . . .

"And the said party of the second part hereby . . . agrees that it will, at its own expense, during the continuance of this lease, keep the said premises and every part thereof in good repair and at the expiration of the said term, yield up and deliver the same, in the condition as when taken, reasonable use and wear thereof and damages by the elements excepted."

In plaintiff's petition it was alleged that at the time this lease was executed and for a long time prior thereto the premises had been used as a retail lumber yard, that on the property were large and valuable buildings and sheds used for storing lumber, also a building used as an office, and all buildings necessary and incidental to the operation of a retail lumber yard, and that the premises were not suitable for any other business; and that the defendant represented and stated to plaintiff that it intended to use the premises for the purpose of operating a retail lumber business during the life of the lease; but—

"Said defendant The McAllister-Fitzgerald Lumber Company never has used said premises in operating a retail lumber business and is not so using said premises at this time; that said buildings have been standing empty, windows are broken out, the doors are standing open and rubbish has accumulated in and around said buildings; that because of the buildings standing empty and unoccupied that the plaintiff has been unable to procure insurance thereon; that prior to the buildings being unoccupied said plaintiff carried $5,000 insurance on said buildings and would carry that amount on said buildings now if he could procure it; that by reason of the failure of said defendant, The McAllister-Fitzgerald Lumber Company, to use and occupy said premises as a retail lumber yard, said premises have become greatly depreciated in value."

Did the foregoing state a cause of action good against defendant's demurrer? Since neither fraud nor mutual mistake is alleged, the contract of lease has to be construed as written and may not be varied by gratuitous recitals of oral representations and statements

ascribed to the parties in the course of the oral negotiations which culminated in the written contract. That instrument is the exclusive arbiter of what they agreed to, unless it is ambiguous or silent on the point in controversy.

And, first, can it be judicially declared that this contract is utterly silent on the controversial point involved in this action? It is covenanted in the lease that defendant shall keep the premises in good repair. The petition alleges that defendant is making default in that provision of the covenant. The court takes judicial notice that unoccupied business premises do fall out of repair and do deteriorate much more rapidly than they do when occupied by a reasonably careful tenant. Nor in this case is this elementary fact of common knowledge dependent upon the legal principle involved in judicial notice. Here the natural and usual results of the premises being unoccupied are alleged in plaintiff's petition and are susceptible of proof; and as against a demurrer they must be taken as true— windows broken out, accumulation of rubbish about the premises and great depreciation in value of the property. Moreover, one of defendant's covenants is to yield and deliver the premises at the end of the term in the condition they were when taken, "reasonable use and wear thereof" excepted. Under the allegations of the petition, that condition is already broken; the premises have already greatly depreciated in value, not through natural wear and tear, but because of want of that ordinary care which an occupying tenant and user would be legally bound to bestow on the premises. Furthermore, the covenant to deliver the premises in the condition they were when leased, reasonable use and wear excepted, fairly imports the understanding of the parties that there would be a reasonable use of the premises during the term of the tenancy, and such use and wear together with a good faith compliance with defendant's covenant "to keep the said premises and every part thereof in good repair" would prevent the deterioration of the premises of which plaintiff justly complains.

One further stipulation of the written instrument is also worthy of note. It is stipulated that if defendant defaults in any of the covenants the plaintiff lessor has the right to reënter and *repossess* the premises, and to *put out* and *remove each and every other occupant*. This stipulation fairly signifies the intention and understanding of the parties that the premises were to be possessed during the lease term by an occupant, by a possessor, but that such posses-

sion and occupancy might be terminated by a lawful repossession of plaintiff and by lawful removal and putting out of every other occupant. It may therefore be said that by fair interpretation of the written terms of this contract of lease, together with the allegations of plaintiff's petition, a cause of action was stated which was good against a demurrer.

But without disposing of this controversy exclusively on a critical interpretation of the lease, it is proper to consider the pertinent questions of law which govern in cases where premises which are peculiarly adapted to a certain line of business and being so used at the time they are leased to a tenant, and where the lease contract is silent as to use. In the absence of some specific recital dealing with the point, is there an implied obligation on the lessee to use and occupy the premises for some lawful purpose to which they are adapted, or may the lessee wholly forbear to use and occupy the premises for any sort of business, and permit the premises to fall out of repair and become uninsurable, on the assumption that such a course of action or inaction by the lessee is no justiciable concern of the lesser so long as the rent is paid according to the contract?

In the well considered case of *Powell v. D. S. & G. R. R. R. Co.,* 16 Ore. 33, 8 A. S. R. 251, the plaintiff leased a warehouse to a railway company at $55 per month for five years. In the same instrument there was also included a contract between the parties for the purchase of the warehouse at $5,000. The lease was silent as to the use of the property, and on account of financial distress and a federal receivership the railway company let the premises fall out of repair. The plaintiff lessor brought an action for waste. In affirming a judgment for plaintiff, the court, in part, said:

"The complaint is based on an alleged failure of the defendant to make tenantable repairs, and for voluntary and permissive waste. . . .

". . . In all leases there are implied covenants, unless expressly excluded. These implied covenants form as much a part and parcel of the contract as if actually written or incorporated therein. When the effect of a contract is to invest a party with a legal right, such right exists as much for his benefit and protection as if expressly stipulated. The law implies an obligation on the part of the tenant to use the premises leased in a proper and tenantable manner, and not to expose the buildings to ruin or waste by acts of omission or commission. 'But in every lease there is,' said Mr. Chief Justice Waite, 'unless excluded by the operation of some express covenant or agreement, an implied obligation on the part of the lessee to use the property as not unnecessarily to injure it'; or, as it is stated by Mr. Comyn, 'to treat the premises demised in such manner that no injury be done to the inheritance, but that

the estate may revert to the lessor undeteriorated by the willful or negligent conduct of the lessee'; (Comyns on Landlord and Tenant, 188.)  This implied obligation is a part of the contract itself, as much as if incorporated into it by express language.  It results from the relation of landlord and tenant between the parties which the contract creates:  *Holford v. Dunnett,* 7 Mees. & W. 352.  It is not a covenant to repair generally, but to so use the property as to avoid the necessity for repairs, as far as possible (*Horsefall v. Mather,* 7 Holt, 9; *Brown v. Crump,* 1 Marsh. [J. J.] 569; *United States v. Bostwick,* 94 U. S. 66.)  Nor is there any dispute, so far as relates to the contract of lease, that it contained any express covenant inconsistent with or intended to exclude the operation of such implied covenant.  . . .

"  . . . While, therefore, the defendant refrained from exercising the right to purchase, and thus allowed the relation of landlord and tenant to continue, it was impliedly bound to treat the demised premises in such manner that no substantial injury should happen, and to make the tenantable repairs. In such case the rule is, that an action may be maintained · on such implied covenants in like manner as if the instrument had contained express covenants to perform them. (*Frey v. Johnson,* 22 How. Pr. 316.)"  (pp. 34, 35, 36.)

In *Nave v. Berry et al.,* 22 Ala. 382, which was an action of assumpsit by the owner of a hotel property against tenants who had sublet it for use as a seminary, during which use it was burned, the written lease was silent as to the use to which the property might be devoted by the lessee.  It was held—

"When the contract of lease is silent, the law implies an obligation on the part of the lessee to use the property in a proper and tenantlike manner, without exposing the buildings to ruin or waste by acts of omission or commission, and not to put them to a use or employment materially different from that in which they are usually employed."  (Syl. ¶ 1.)

In the opinion the court said:

"The first duty imposed upon this court, in order to a decision of the various questions presented by the record, is, the interpretation of this written contract. . . . On the part of the lessees, there is no right expressly stipulated; these are all left entirely to the implications of law.  On the part of the lessor, in addition to the express stipulations in his favor, the law implies his right to have the property used in a proper and tenantlike manner, without exposing the buildings to ruin or waste, by acts of omission or of commission; and also, that the premises should not be put to a use or employment materially different from that in which they are usually employed.  To the extent of these implied rights on the part of the lessor, the law implied also a corresponding obligation on the part of the lessees."  (p. 390.)

There is considerable authority for the proposition that where the tenant is not restrained by the terms of the lease, he may use the property for any lawful purpose.  (*Reed et al. v. Lewis et al.,* 74 Ind. 433; *Bucklen v. Cushman,* 145 Ind. 51; *Chamberlain v. Brown,*

141 Ia. 540; *Taylor v. Finnigan*, 189 Mass. 568, 2 L. R. A., n. s., 973.) But this rule has its limits. In *Clementson v. Gleason*, 36 Minn. 102, the lease was silent as to use, except that the premises were to be kept clean and were not to be used as a saloon or meat market. It was held that the stipulation as to cleanliness and the restrictions as to use did not authorize the use of the premises as an undertaking establishment and as a morgue, and it was held that the lessor had a cause of action for damages for such misuse of the property. It has also been held that in leasing a hotel there was an implied covenant to use it for such purpose (*Spalding Hotel Co. v. Emerson*, 69 Minn. 292); and in *Gale v. McCullough*, 118 Md. 287, it was held that although the lease of a residential property did not contain the usual restriction that the property should not be used for purposes foreign to an ordinary tenancy, the lessor could by injunction prevent his lessee from opening a thoroughfare through the property for public use. In *Landt et al. v. Schneider*, 31 Mont. 15, the "Maiden brewery plant" and some 4½ acres of ground, together with the brewery buildings thereon were leased. Among the issues which arose between the litigants was one concerning the use to which the property might be put. The court said:

"There is nothing in the description of the property contained in the lease by which it can be determined from the lease itself whether it was intended for occupation by human beings or not, and this was one of the issues made by the pleadings. Parol evidence was admissible under these issues to explain the purposes for which the property was leased, and, as incidental thereto, its condition and description, and the court did not err in admitting such evidence." (p. 19.)

In *Chamberlain v. Brown*, supra, where a certain use of the leased property was a litigated question, the court ruled:

"While parol evidence cannot be received to vary the terms of a written lease, still it may be admissible to show the manner in which it was understood by the parties.

"As bearing upon the intention of parties to a lease, the use made of the premises at and prior to the lease, their condition and suitableness for a given purpose may be shown by parol; and where the lease is silent as to the use of the premises the intention may be supplied by parol." (Syl. ¶¶ 5, 6.)

In *Milling Co. v. Waite*, 112 Kan. 809, 213 Pac. 160, the plaintiff made a written contract with defendant for the purchase of some property on which was an elevator and coal sheds. In an action for specific performance, evidence of conversations between the parties prior to the execution of the written contract was admitted.

This evidence tended to show matters not covered by the written contract—that the defendant desired to use the elevator during the grain-buying season. This court, citing some of our own cases and others, held that parol testimony was proper to show the intention and understanding of the parties. (See, also, 35 C. J. 1221; 36 C. J. 84.)

Not to unduly extend this inquiry, it seems proper to hold that where business premises like a lumber yard are leased for a long term of years, and the lease is silent as to the use, the tenant has the right to use the premises in any lawful way not prejudicial to the purpose for which they were peculiarly adapted, but in the absence of some contractual stipulation showing a contrary intent, the landlord has the complementary right to have the premises so used; and the law will accord him justiciable redress for the tenant's failure to so use and occupy the property if it thereby falls into a state of disrepair and deterioration such as would not naturally occur if the property were put to a proper use. And where the contract is altogether silent as to the intended use, parol evidence is competent to show what use of the premises the parties intended; and, indeed, it would also be proper in such situation, if such were the fact, to show that the parties intended that the property need not be used. In this case, if we felt impelled to hold that the lease was altogether silent as to intended use, not only could the plaintiff adduce parol evidence to show the intended use, but the defendant might adduce evidence, if it were available, to show the intention of the parties that the property should not be continued in use as a retail lumber yard nor put to any other legitimate use, but that it had been agreed that it should be closed and put out of business altogether, for the specified consideration of the prompt and regular payment of $67.50 per month and due compliance with the other covenants of the lease.

So whether this cause be disposed of by the interpretation of its terms according to the view of the majority of this court, or on logical deduction from recognized principles of law, it must be held that defendant's demurrer to plaintiff's petition should have been overruled. It does not follow, however, that the forfeiture of the lease demanded by plaintiff should be decreed. (*Snehoda v. National Bank,* 115 Kan. 836, 840, syl. ¶ 1, 224 Pac. 914.) The trial court, sitting as a court of equity, may deal with the situation in

accordance with its own good judgment and discretion as to what justice demands. This oft-recognized principle of equity was followed in *Brown v. Oil Co.*, 114 Kan. 166, 217 Pac. 296, where cancellation of an oil and gas lease was demanded for breach of an implied contract to develop. This court said:

"This court reiterates, however, its general attitude towards actions to forfeit oil and gas leases for breach of implied contracts to develop, and that less drastic redress should be sought for to do justice between the parties." (p. 170.)

In that case the oil company was given further opportunity to proceed in good faith to develop the property, otherwise a forfeiture was to be declared. We would not intimate that there is a close analogy between the case at bar and those involved in oil and gas leases, other than that the latter do reflect our general unreceptive mood towards forfeitures where the rights of aggrieved litigants can otherwise be adequately secured. But in *Alford v. Dennis*, 102 Kan. 403, 406, 170 Pac. 1005, it was said:

"Unless the plaintiff's tract was to be developed sometime there was no reason to include it in the lease, and as it stands it is of no value to defendants. Unless the defendants had a *bona fide* intention to prospect and develop this tract they had no proper purpose in leasing it, and to cancel the lease will do them no injury. While equity abhors forfeitures it likewise abhors injustice."

And so far as disclosed by plaintiff's petition, the same may be said here. Unless the defendant had a *bona fide* intention to make a legitimate use of plaintiff's lumber yard, and to care for it in a proper tenantlike manner, it had no proper purpose in leasing it, and to cancel the lease will do it no injury.

The judgment on defendant's demurrer should be overruled and the cause is remanded for that purpose and for further proceedings consistent therewith.

BURCH, J. (dissenting): The decision results in part from confusion of ideas, disclosed by the manner of stating the question to be decided:

"In the absence of some specific recital dealing with the point, is there an implied obligation on the lessee to use and occupy the premises for some lawful purpose to which they are adapted, or may the lessee wholly forbear to use and occupy the premises for any sort of business, and permit the premises to fall out of repair and become uninsurable, on the assumption that such a

course of action or inaction by the lessee is no justiciable concern of the lessor so long as the rent is paid according to the contract?" (*Ante,* p. 458.)

Of course the tenant must keep the premises in repair, and must not commit waste, and the landlord has appropriate remedies for those delinquencies. But if a window is broken, the thing to be done is to put in a new window. If doors are left open, the thing to be done is to close them. If rubbish accumulates, the thing to be done is to call the trash collector. The tenant is under no obligation to occupy buildings in order to remedy any of those conditions.

Plaintiff did not claim there was any relation between waste and insurance. He said he could not procure insurance because the buildings were unoccupied. The safeguard against that contingency was to cover the subject of insurance by a provision in the lease.

If a tenant desires to keep buildings unemployed for the purpose for which they were erected and to which they are adapted, that is his use of them. That use is a lawful use, and he is under no obligation to employ them in any other manner, in the absence of a covenant to do so inserted in the lease.

If the lease were procured under material representations which have not been fulfilled, the law provides a remedy, but the remedy is not to manufacture out of whole cloth a covenant, and place it as a patch upon the lease. Here is the syllabus in the case of *Milling Co. v. Waite,* 112 Kan. 809, 213 Pac. 160:

"Where a written contract is, on its face, obviously incomplete, parol evidence may be received, not to contradict or vary its terms, but to show the complete agreement of the parties. Following *Shire v. Bank* (*ante,* p. 690)." (¶ 4.)

If search for authority had revealed any decision that there is an implied covenant in a lease that buildings must be occupied and used, it certainly would have been cited. None of the cases cited is authority for that proposition, and profuse citation of irrelevant cases gives no better color of soundness to a judicial opinion than it does to a brief.

Mason and Marshall, JJ. (concurring specially): We concur on the sole ground that the petition contains allegations concerning the present condition of the premises sufficient to show such an injury to the property through want of proper care as to entitle the plaintiff to relief of some character. .