No. 29,156.

THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY and THE HAVANA COUNTRY CLUB, *Appellees*, v. VAN C. HAMILTON, *Appellant*.

(288 Pac. 560.)

Opinion filed June 7, 1930.

*Thomas E. Wagstaff* and *Jay W. Scovel*, both of Independence, for the appellant.

*William R. Smith, Owen J. Wood, Alfred A. Scott, Alfred G. Armstrong*, all of Topeka, *Chester Stevens*, of Independence, and *S. H. Barr*, of Caney, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiffs prosecuted this action to enjoin the defendant from cutting fences placed by the Santa Fe railway company around a lake constructed on land owned by the defendant, but which had been condemned by the railway company for the purpose of building a reservoir to secure water for the operation of its railroad. After condemnation, the railway company leased the property to the Havana Country Club as a site for a clubhouse and other pertinent buildings for the purpose of maintaining a hunting, fishing, bathing, boating and pleasure resort. The defend-

ant asked that the plaintiffs be enjoined from interfering with him in the use of the reservoir for the purpose of watering his cattle and from using the reservoir for any purpose other than by law granted to the railway company. Judgment was rendered enjoining the defendant from cutting the fences erected by the plaintiffs around the reservoir on the land that had been condemned, and enjoining the plaintiffs from using any part of the land condemned for hunting purposes. The defendant appeals.

Findings of fact and conclusions of law were filed as follows:

"1. Both plaintiffs are corporations, duly organized.

"2. Prior to the year 1912 the defendant was the sole owner in fee simple of the S. W. quarter of section 17, and S. E. quarter of section 18, all in township 34 south, range 14 east, in Montgomery county, Kansas.

"3. About May, 1912, the plaintiff, railway company, took steps to, and did, have condemned, for the purposes of constructing a dam and impounding water for railroad purposes, a strip of land, irregular in boundary, but extending substantially through the center of the two quarter sections above described, and containing 132 acres, more or less.

"4. Prior to this, or about the same time, the plaintiff, railway company, purchased a tract of land, about eleven acres, adjoining and lying just west of the above tract, and upon this last-described acreage it subsequently constructed a dam and thereby impounded water which covered substantially the lands of the defendant which were taken by such condemnation proceedings.

"5. After report of the commissioners in the condemnation proceedings, an appeal was taken therefrom by the defendant and the matter tried out in the district court, and damages awarded therein to the defendant, which damages were paid and accepted by the defendant.

"6. During the trial of this appeal the plaintiff, railway company, made an offer, in open court, to grant to the defendant the right to water for stock purposes from the lake which it proposed to make. It being contemplated that such offer was made for the purpose of being taken into consideration by the jury in the award of damages, this offer was by the defendant refused and he objected to the making of same and to having such so considered, and thereupon the court sustained the objection to such offer and withdrew it from the consideration of the jury, and thereafter instructed the jury that such should not in any way be considered in determining the amount of damages to be allowed to defendant for the appropriation of his property.

"7. In the latter part of the year 1912, or first part of 1913, the plaintiff, railway company, constructed around the property so taken in the condemnation proceeding, a good and substantial fence.

"8. Some time subsequent to this, and in July, 1913, the defendant wrote to the plaintiff, railway company, with reference to the matter of securing water for his stock, and in reply thereto the company gave him permission to open the fence at various places for the purpose of temporarily watering his stock, and further suggested that an arrangement might be made by which the company would lease to the defendant certain water rights for stock pur-

poses to said lake. To this the defendant made no reply, but did open the fences so as to permit his stock to go to the lake for water. Nothing further was done with reference to making arrangements for the permanent use of said water.

"9. In the year 1918 or 1919 the plaintiff, railway company, had the fences around this property rebuilt and put intact. Thereafter the defendant again opened the fences so as to permit his stock to go to said water. Subsequent thereto the railway company again repaired said fences and same were again cut down by the defendant, Hamilton, and Hamilton has at all times claimed and now claims that the plaintiff has no right to fence said property, and when so fenced that he has the legal right to cut the same, and does cut the same for the purpose of allowing his stock to run to the lake for water.

"10. At one time when the defendant cut these fences he put in from the main fence a part of the way out into the lake what is called 'drift' fences for the purpose of keeping his cattle from going to all parts of the lake, and to confine them for drinking access to certain parts of the lake.

"11. After the plaintiff, railway company, fenced this property it left to the defendant about fifty acres of land in one tract south of the lake, in the S. E. quarter of section 18. Also about sixty acres north of the lake in the same quarter section. Also about eighty acres east of the lake in the other quarter section. There was no permanent water left on any of these tracts of land for stock purposes, and each of these tracts were separate and apart, and no way for stock to go from one tract to the other.

"12. A few years after constructing this lake the plaintiff, railway company, leased the property to the plaintiff, country club, for the purposes of a recreation ground, and under which the country club had a right to picnic, bathe, fish, boat, hunt, shoot and do other such acts incident to a recreation club, and under which grant the country club agreed to take care of the property, police the same, keep the premises and water in good clean condition, and pay a small rental value therefor. This lease is in evidence and marked 'Exhibit B,' attached to the petition.

"13. Thereupon the country club entered into possession of said property and ever since has been using it for the purposes above set forth. The defendant has at all times known of the use of the property by said country club and its members, but until the commencement of this action did not know that there had been a formal or written grant made therefor.

"14. The use of said property by the country club in bathing, fishing, boating, picnicking, and in general recreational activities, except in the matter of hunting and shooting, does not create any greater burden upon the property condemned by the railway company than was contemplated by the condemnation proceedings, and in no way injures or damages the defendant to any greater extent than was contemplated by said proceeding, and does not, in any way, constitute a nuisance as against him.

"15. The country club erected several cottages and a number of shooting 'blinds' around the edge of said lake, and one of these cottages is occupied by a regular caretaker and custodian of the property, employed by the club. These buildings do not constitute any extra burden upon the property, but are incidental to its use for general recreational purposes.

"16. During the occupancy of this property by the country club three of the animals of the defendant were shot. It does not appear from the evidence whether these animals, at the time they were shot, were upon the land that had been condemned or upon the other part of the land owned by the defendant, and the evidence does not disclose that they were shot by members of the country club, but the natural inference to be drawn from all the evidence, and circumstances disclosed by the evidence, is that they were shot as a result of the hunting and shooting upon said lake by members of the country club. There is some evidence indicating that a few other animals of the defendant were killed, or died, at times that this property was being used by the country club, but not sufficiently definite to warrant the court in finding that the same came to their death by reason of the operation of the members of said club.

"17. The hunting and shooting upon said lake and around the same, by members of the club, disturbs and makes restless and excited the live stock of the defendant when upon his part of the land above described which was not condemned by the railway company, and such acts on the part of the members of said club injures and damages the defendant in this respect and thereby constitutes and creates a nuisance as against him, and these acts create a greater burden upon the premises taken by the railway company than was contemplated in the proceedings whereby the same was condemned and so taken by it.

"18. Some members of the country club, in going back and forth to the lake, have passed over the lands of the defendant, not condemned, both walking and by automobile. This is not an issue in the case as the pleadings now stand, but the defendant asks that the pleadings be considered as amended or broadened to cover this feature of the case, and such permission is given. The court further finds, however, that such have been the acts only of certain individual members of said club, and that such acts have not been authorized or in any way countenanced by the club as a corporation or organization.

## "Conclusions of Law.

"1. The plaintiff, railway company, has the legal right to fence, and keep fenced, the property which it took from the defendant by the condemnation proceedings, and the defendant has no legal right to cut, injure or destroy the same.

"2. The plaintiff, country club, has a right, under its lease or grant from the railway company, to the use of said property for the purposes as set forth in its lease or grant, except for the purpose of hunting and shooting upon said premises.

"3. The plaintiffs are entitled to injunctive relief as against the defendant to prevent him from cutting or destroying the fences around the condemned property.

"4. The defendant, Hamilton, is entitled to injunctive relief as against the plaintiffs to prevent hunting and shooting upon the condemned property during all times when the defendant has live stock upon the other parts of his said described land than that covered by the condemnation."

There was evidence which tended to prove that the cattle of the defendant, when wading and standing in the water, polluted it and rendered it unfit for use by the railway company, but no finding was made on that subject.

The defendant contends that the land was condemned for the purpose of constructing a reservoir in which to gather water for the use of the railway in operating its road, and that the leasing of the reservoir and property condemned to the Havana Country Club increased the burden upon the land and was not within the purposes for which the land was condemned.

In *Dillon v. Railroad Co.*, 67 Kan. 687, 74 Pac. 251, this court declared that—

"When a railroad company has regularly condemned a tract of land for a water station and caused it to be flooded with water for its use, the leasing thereof to a club for fishing, hunting, bathing and skating, reserving to itself the actual possession for all purposes for which the land was condemned, with the right to cancel the lease at any time, upon thirty days' written notice, is not, as matter of law, an abandonment by said company of the land as a water station." (Syl. ¶ 4.)

In 32 C. J. 29 the writer says:

"Except in cases where a statute gives an absolute right to an injunction, an injunction, whether temporary or permanent, cannot as a general rule be sought as a matter of right, but its granting or refusal rests in the sound discretion of the court under the circumstances and the facts of the particular case."

In *Railway Co. v. Shriver*, 101 Kan. 257, 258, 166 Pac. 519, this court said:

"Granting or refusing an injunction is a subject of equitable cognizance over which the district court has a large discretion, depending on all the facts and circumstances."

This rule has been applied in a number of instances where temporary injunctions have been granted. (*Stoddart v. Vanlaninghan*, 14 Kan. 18; *Akin v. Davis*, 14 Kan. 143; *Conley v. Fleming*, 14 Kan. 381; *Olmstead v. Koester*, 14 Kan. 463; *Wood v. Millspaugh*, 15 Kan. 14; *Mead v. Anderson*, 40 Kan. 203, 19 Pac. 708; *State v. Telephone Co.*, 77 Kan. 774, 95 Pac. 391; *Ramsay v. City of Oxford*, 124 Kan. 713, 261 Pac. 572.)

If it be conceded that the plaintiff railway company had no right to lease the reservoir to the country club, what damage was done to the defendant by such lease? The court is unable to perceive wherein he was damaged in any way, except by the hunting and

shooting. The railway company has the right to police the reservoir in such manner as it thinks best. Its contract with the Havana Country Club provided for that policing. The policing is done as part of the consideration for the privileges granted by the lease. If *Dillon v. Railroad Company*, supra, is followed, if the granting of an injunction was within the discretion of the trial court, and if the defendant has not sustained any damage by reason of the operation of the country club under its lease, it must be held that the defendant has no right to enjoin the plaintiffs from operating under that lease.

■ The defendant contends that the railway company by its condemnation proceedings did not secure the right to fence the reservoir and exclude therefrom the right of the defendant to water his cattle therein. If the railway company had not fenced the reservoir and the defendant had in some way sustained damage caused by the reservoir not being fenced, he could probably compel the railway company to compensate him for the damage he would thereby sustain. The law compels the railway company to fence its right of way, which may properly be construed to include all land occupied for railroad purposes. That would include the land occupied by the reservoir which occasioned this litigation. Outside the statute, the railway company has the right to fence the reservoir to protect it from trespassers and from injury that might come to it from the land adjoining it. When the railway company condemned the land it acquired the right to fence it and exclude therefrom the defendant for all purposes inconsistent with its occupancy by the railway company.

The judgment is affirmed.

HARVEY, J. (dissenting in part): In my judgment, the railway company had no authority to lease to the country club the land condemned for water purposes.