No. 42,104

Roy Borgen and Mary Borgen, *Appellants*, v. Billy Wiglesworth and Merle McClure, *Appellees*.

(369 P. 2d 360)

Opinion filed March 3, 1962.

*George K. Melvin,* of Lawrence, argued the cause and was on the briefs for the appellants.

*Eugene C. Riling,* of Lawrence, argued the cause, and *John J. Riling,* of Lawrence, was with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, C. J.: This is an action in which plaintiffs (lessors) seek to enjoin defendants (lessees) from the use made of the leased premises. The district court denied the injunction and plaintiffs have appealed.

On April 1, 1957, the plaintiffs leased to the defendants certain land, then outside the limits of the City of Lawrence, Kansas. The lease provided:

"Witnesseth that parties of the first part in consideration of payment of rents and taxes being paid by parties of the second part and in further consideration of the construction of a building for car washing and car servicing purposes does hereby grant, demise, and lease to parties of the second part the following property to wit: (Description)".

The lease was for a primary term of seven years with the right of the lessees to extend it for two five-year periods "under the same terms herein set out except that parties of the second part (lessees) shall not be required to make any further improvements on the property."

The lease further provided in part as follows:

"It is further agreed between the parties that the parties of the second part shall construct a car washing building at their own expense upon said land described above and this to be completed 120 days from the date of this agreement. . . . Parties of the second part shall comply to the specifications agreed upon by parties of the first part and parties of the second part. It is further agreed between the parties that parties of the second part shall have the right to construct any additions to such car washing building at their own expense and to their own specifications."

The lessees were to pay all taxes after the execution of the lease and fifty dollars per month rent commencing April 1, 1959. In the event the lessees surrendered possession, "then all buildings and improvements placed thereon by parties of the second part shall remain and be and become property of parties of the first part."

The lease also provided:

"It is further agreed between the parties that parties of the second part will not engage in any kind of cafe or restaurant business upon this property described above during the life of this lease or any extension thereof."

Other facts material to the controversy may be summarized as follows:

A car washing building was constructed on the leased property, and car washing was started on June 8, 1957. The building was sixty-five feet in length and twenty feet in width. It consisted of two concrete block walls running the length of the building, a concrete floor and a partial roof to support the walls. The ends of the building were not enclosed. Because of open structure of the building car washing ceased when the weather got cold in the fall of 1957.

Sometime during the following winter the leased land was taken into the City of Lawrence. In March of 1958 the lessees obtained a permit to convert the building from a car wash to a launderaide business and started to enclose the structure. On April 4, 1958, lessors notified the lessees that if the work continued appropriate legal action would be taken. The notice was ignored and the building was completed for a launderaide.

On April 16, 1958, after most of the additions were completed, plaintiffs brought this action to enjoin the defendants from reconstructing and remodeling the building for any purpose other than that of car washing and car servicing and from using the building for any other purpose. A restraining order or temporary injunction was not requested. The building was completed in its entirety before the case was tried.

Following the trial the district court, in a memorandum decision, stated the issues and concluded as follows:

". . . Actually there are only two issues which must be resolved and they are: (1) Should the defendants be required to tear down and remove the improvements and additions which have been made to the original car wash structure; and (2) are defendants prohibited under the terms of the lease from operating any business except a car wash and car servicing business on the leased premises, or, stated in another way, are plaintiffs entitled to

have defendants enjoined from operating any business except a car washing or car servicing business on the premises leased to them by plaintiffs?

"Inasmuch as the lease gives defendants the right to make such additions to the original structure as they desire and since any such addition may be made under the lease, to defendants' own specifications, it is difficult to see how plaintiffs can contend that what defendants have done amounts to a commission of waste. If plaintiffs had intended to retain control over the future character of the structure which defendants were required to build as part of the consideration for the lease, they should have reserved such control rather than giving defendants a virtual blanket authority to build such additions as they desired to their own specifications.

"The only business which the lease prohibits defendants from engaging in is the restaurant business. If plaintiffs had wanted to restrict the use of the leased premises to the operation of a car wash and car servicing business, they should have inserted such a clause in the lease. The wording of the lease in question would not in my judgment prohibit defendants from engaging in the launderaide business."

Judgment was entered in accord with the foregoing conclusions.

After an extended examination of the record and careful consideration of all contentions advanced by counsel for the respective parties we are constrained to agree with the conclusions and judgment of the district court.

The lessors were interested in the construction of a building meeting certain specifications and dimensions. The improvement was part of the consideration for the lease. The lessees were given the unlimited right to make additions to the structure. Lessees were specifically restricted from using the premises to engage in any kind of cafe or restaurant business. There was no other restriction as to use.

It would also appear that enclosing the ends and putting a roof on a structure is an addition. There is no claim here of waste or injury to the reversion. Indeed, the entire controversy centers on the use of the premises.

Neither party is now contending that the provisions of the lease are ambiguous. Under similar circumstances in *Smith v. Holmes,* 181 Kan. 438, 312 P. 2d 228, we said:

"Neither party contends the provisions of the lease are ambiguous, consequently, the rule with respect to the binding effect of express terms of a contract as applied in *Anderson v. Rexroad,* 175 Kan. 676, 266 P. 2d 320, is applicable here. There it was said:

"'. . . The established rule is that the intention of the parties and the meaning of a contract are to be deduced from the instrument where its terms are plain and unambiguous; that when the language is clear and unequivocal the meaning must be determined by its contents alone; that words cannot be

read into a contract which import an intent wholly unexpressed when it was executed; and that the court may not make an agreement for the parties which they did not make for themselves (See West's Kansas Digest, Contracts, § 143; Hatcher's Kansas Digest [Rev. Ed.], Contracts, § 40) . . .' (1. c. 679.)" (p. 441.)

The general rule that leases are to be interpreted from "four corners" and that all of the language used anywhere in such an instrument must be considered, construed and harmonized, is well-established. (See *Smith v. Russ*, 184 Kan. 773, 778, 339 P. 2d 286, and cases there cited.)

The instant lease specifically prohibits the use of the premises for a cafe or restaurant business. There would be no justification for the court reading into the lease other restrictions as to use. They should have been stipulated if intended.

It is also the general rule, with certain reasonable exceptions, that where a tenant is not restrained by the terms of the lease the premises may be used for any lawful purpose. (*Asling v. McAllister-Fitzgerald Lumber Co.*, 120 Kan. 455, 244 Pac. 16, 46 A. L. R., 1127.)

The rule just stated is discussed in 32 Am. Jur., Landlord and Tenant, §§ 203,.204, pp. 190, 191, where it is said:

". . . Moreover, where the lease does not restrict the use of the premises, it may not be shown that there was an oral agreement of restriction; and it has been held that a lease which, when properly interpreted in view of an applicable custom, does not preclude the use of the premises for the sale of merchandise, cannot be varied by evidence of an extrinsic agreement by the lessee that the premises were to be used for the sale of shoes only.

"A provision in a lease authorizing the use of the premises for a specified purpose or stating that they are to be used for such a purpose is generally regarded as permissive instead of restrictive, and does not limit the use of the premises by the lessee to such purposes, or impliedly forbid that they be used for a similar lawful purpose which is not injurious to the landlord's rights or not otherwise expressly forbidden. There appears, however, to be authority to the contrary. (§ 203.)

"Where the words used in the lease are merely descriptive of the character of the premises, although indicating a particular use to which they might be adapted, the great weight of authority is to the effect that such words cannot be construed as a restriction upon the lessee, in his use of the property, to the distinctive use which the words may suggest. . . ." (§ 204.)

See, also, 2 A. L. R. 2d p. 1143, and annotataed cases pp. 1148 to 1155, incl.

Aside from what has been heretofore stated and held there is an additional reason why the judgment of the district court should not be disturbed in the case at bar. A large amount of discretion is

permitted in the exercise of injunctive relief. Moreover, a strictly legal right will not be enforced by injunction contrary to equity and good conscience.

See *Babb v. Rose*, 156 Kan. 587, 134 P. 2d 655, which holds:

"Unless otherwise provided by statute a large measure of judicial discretion is recognized in the exercise of power to grant or refuse an injunction." (Syl. ¶ 2.)

See, also, *Smith v. City of Kansas City*, 167 Kan. 684, 689, 690, 208 P. 2d 233.

And see *Atchison, T. & S. F. Rly. Co. v. Hamilton*, 130 Kan. 685, 288 Pac. 560, a case where the court had under consideration a petition to enjoin the use being made of certain property, where it is stated:

"In 32 C. J. 29 the writer says:

" 'Except in cases where a statute gives an absolute right to an injunction, an injunction, whether temporary or permanent, cannot as a general rule be sought as a matter of right, but its granting or refusal rests in the sound discretion of the court under the circumstances and the facts of the particular case.'

"In *Railway Co. v. Shriver*, 101 Kan. 257, 258, 166 Pac. 519, this court said:

" 'Granting or refusing an injunction is a subject of equitable cognizance over which the district court has a large discretion, depending on all the facts and circumstances.'

"This rule has been applied in a number of instances where temporary injunctions have been granted. (*Stoddart v. Vanlaninghan*, 14 Kan. 18, *Akin v. Davis*, 14 Kan. 143; *Conley v. Fleming*, 14 Kan. 381; *Olmstead v. Koester*, 14 Kan. 463; *Wood v. Millspaugh*, 15 Kan. 14; *Mead v. Anderson*, 40 Kan. 203, 19 Pac. 708; *State v. Telephone Co.*, 77 Kan. 774, 95 Pac. 391; *Ramsay v. City of Oxford*, 124 Kan. 713, 261 Pac. 572.)" (p. 689.)

In *Harder v. Power Co.*, 95 Kan. 315, 148 Pac. 603, this court held:

"Whether a mandatory injunction requiring a restoration of the property to its former condition should be granted usually depends upon the consideration of the equities between the parties." (Syl. ¶ 1.)

One feature of the Harder case was quite similar to the case now being considered. There—as here—before the case was reached for trial the construction had been completed and no restraining order or temporary injunction had been requested. This court, at page 318 of the opinion, stated:

"Whether a mandatory injunction requiring the restoration of the property to its former condition shall be granted usually depends upon a consideration of the equities between the parties. (*Gilmore v. Salt Co.*, 84 Kan. 729, 115 Pac. 541, 34 L. R. A., n. s., 48. See, also, cases cited in Note, 22 Cyc. 782; also *Meyn v. Kansas City*, 91 Kan. 29, 136 Pac. 898.)

" 'In all cases the court takes into consideration the relative inconvenience to

be caused to the parties, and will refuse an injunction if it appears inequitable to issue it." (22 Cyc. 783.)

"An injunction will not be issued even to enforce a strictly legal right where equity and good conscience does not require it. (*Railway Co. v. Meyer,* 62 Kan. 696, 64 Pac. 597.) . . ." (pp. 318, 319.)

Under the confronting facts and circumstances we are convinced that equity and good conscience should not require the tearing down and removal of the additions and improvements to the structure on the leased premises; that the record does not disclose that any injury will result to the lessors if the business of a launderaide is conducted in such structure; and that, after giving consideration to the equities between the parties, the trial court did not abuse sound judicial discretion in refusing to grant the plaintiffs injunctive relief.

The judgment is affirmed.